UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE K. RHOADS AND MARK FISHER, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, a Federal Agency, <br><br> Defendant. | CASE NO. 1:16-cv-01273-LJO-EPG <br><br> MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 13, 18. |

## I. INTRODUCTION

Plaintiffs Joanne K. Rhoads ("Rhoads") and Mark Fisher ("Fisher") (collectively, "Plaintiffs") bring this action against Defendant, the United States Department of Veterans Affairs ("Defendant" or "VA"), to compel its employees to appear for depositions in state court personal injury actions brought by Plaintiffs. Plaintiffs bring a motion for summary judgment and ask the Court to order the VA to allow the depositions of three VA nurses. Defendant brings a cross-motion for summary judgment and asks the Court to deny Plaintiffs' request. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. FACTUAL BACKGROUND

Plaintiffs have each filed an action in Madera County Superior Court alleging that they suffered injuries because of exposure to carbon monoxide in the VA Clinic in Oakhurst, California ("Oakhurst

1

Clinic"). (Administrative Record ("AR") 030; Defendant's Response to Plaintiffs' Statement of Undisputed Facts ("UMF")[1] No. 1, ECF No. 18-1.) Those two lawsuits are identified as: *Rhoads v. Ladell, Inc.*, Madera County Superior Court Case No. MCV06770 (the "*Rhoades* Action") (AR 030; UMF No. 2), and *Fisher v. Ladell, Inc.*, Madera County Superior Court Case No. MCV071017 ("the *Fisher* Action") (AR 030; UMF No. 3) (collectively, the "State Court Actions"). In those lawsuits, Plaintiffs allege that a malfunctioning HVAC system in the Oakhurst Clinic released carbon monoxide and caused them to suffer severe health repercussions, including difficulty walking, memory loss, and cognitive impairment. (AR 031-32; UMF No. 20.)

Plaintiffs allege, and Defendant does not dispute, that individuals employed by the VA witnessed Plaintiffs' suffering from the effects carbon monoxide exposure. (AR 030; UMF No. 5.) These employees include the three individuals whom Plaintiffs wish to depose in the State Court Actions: VA nurses Kristi Murasewski ("Murasewski"), Dorothy Johnson ("Johnson"), and Misty Yeterian ("Yeterian"). (AR 001; UMF Nos. 6, 8.) According to Plaintiffs, these individuals have "pertinent information relative to the facts at issue in the ongoing lawsuit and have the ability to provide first-hand personal knowledge as to relevant issues of the presence of carbon monoxide in the workplace, effects suffered by themselves, and others present in the workplace." (AR 030; UMF No. 6.) Plaintiffs allege, and Defendant does not dispute, that they have no remedy to obtain the knowledge of these witnesses other than through depositions. (AR 033; UMF No. 13.)

The VA previously inquired regarding the negative health effects caused by the malfunctioning HVAC system. (AR 031; UMF No. 7.) The VA also permitted Oakhurst Clinic Nurse Manager Eileen

---

[1] Local Rule 260(e) directs that each motion for summary judgment shall be accompanied by a "Statement of Undisputed Facts" that shall enumerate each of the specific material facts on which the motion is based and cite the particular portions of any document relied upon to establish that fact. In APA cases, such statements are generally redundant because all relevant facts are contained in the agency's administrative record. *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1084 (E.D. Cal. 2011). Because the undisputed material facts submitted by the parties in this case sometimes provides helpful clarification of the VA's position, the Court will refer to both the undisputed material facts and the administrative record.

Hayes to be deposed in the *Rhoads* Action in December 2015 and February 2016 pursuant to a subpoena issued by Trane, Inc., one of the defendants in the State Court Actions. (AR 030, 032; UMF No. 14.)

Depositions of Murasewski, Johnson, and Yeterian were noticed by subpoenas issued to Defendant. (AR 009-029; UMF No. 8.) Plaintiffs have offered to depose these individuals on a weekend, holiday, day off, before work, or after work, and to make the location as convenient as possible for the witnesses. (AR 031; UMF No. 16.) Plaintiffs have also offered to make the depositions as short as possible to avoid work interruptions. (AR 031; UMF No. 17.)

In a letter dated July 22, 2016, the U.S. Attorney's Office advised Plaintiffs that the VA would not allow the depositions to proceed in the State Court Actions. (UMF Nos. 10-11; Christofferson Decl., Ex. G, ECF No. 13-3.) In the letter, counsel for the VA cited the Supreme Court's decision in *Touhy v. Ragen*, 340 U.S. 462, 468 (1951) ("*Touhy*"), for the proposition that federal agency regulations prohibiting federal employees from testifying without authorization are "valid, enforceable, and binding on federal and state courts." (Christofferson Decl., Ex. G at 1.) The letter noted that VA regulations "require a party seeking testimony or documents in a legal proceeding to provide the agency a written request containing the information described in 38 C.F.R. § 14.805" and that "[t]he remedy for challenging an agency's decision whether to permit testimony is a separate action in federal court pursuant to the Administrative Procedure Act." (*Id.* at 2.)

In a separate February 16, 2017 letter, Camille Stroughter ("Stroughter"), a VA attorney, responded to Plaintiffs' August 9, 2016 request to take depositions.[2] (AR 066.) In that letter, the VA explained that its *Touhy* regulations required the determining official to "consider the effect . . . which testifying . . . will have on the ability of the agency or VA personnel to perform their official duties." (*Id.*) The VA denied Plaintiffs' request, explaining that allowing its employees to be deposed would negatively impact patient care and would require the VA to spend money for private purposes unrelated

---

[2] According to the letter, the reason for the delayed response is that Plaintiffs sent the original request intended for Ms. Stroughter to an incorrect email address. (AR 066.) Therefore, Ms. Stroughter did not timely receive Plaintiffs' letter. (*Id.*)

3

to its mission. (*Id.* at 067.) The letter explained that the Oakhurst Clinic is an understaffed rural clinic that serves a needy population, and that changes to the nurses' schedules would negatively impact patient care. (*Id.* at 067-068.) The letter also specifically cited the following factors as reasons for the denial: 38 C.F.R. § 14.804(a) ("the need to avoid spending the time and money of the United States for private purposes and to conserve the time of the VA personnel for conducting their official duties concerning servicing the Nation's veteran population"); § 14.804(b) ("[h]ow the testimony or production of records would assist VA in performing its statutory duties"); § 14.804(h) ("[w]hether the testimony would . . . interfere with patient care") and § 14.804(l) ("[t]he need to minimize VA's possible involvement in issues unrelated to its mission"). (*Id.* at 068.)

Discovery in the State Court Actions closes on April 19, 2017. (AR 031; UMF No. 12.) The State Court Actions are set for trial starting on June 19, 2017. (AR 031; UMF No. 11.)

### III. PROCEDURAL BACKGROUND

Plaintiffs filed suit against Defendant on August 26, 2016, challenging the agency's decision under the Administrative Procedure Act ("APA") as arbitrary and capricious and seeking to obtain the right to depose three VA nurses in the underlying state court action. (ECF No. 2.) On January 13, 2017, Plaintiffs filed a motion for summary judgment. (ECF No. 13.) Defendant filed an opposition to Plaintiffs' motion for summary judgment and a cross-motion for summary judgment on February 17, 2017. (ECF No. 18.) Plaintiffs filed an opposition to Defendant's cross-motion for summary judgment and a reply in support of their motion for summary judgment on February 24, 2017. (ECF No. 19.) Defendant filed a reply in support of its cross-motion on March 3, 2017. (ECF No. 20.)

This Court has jurisdiction pursuant to the APA, 5 U.S.C. § 551, *et seq.* Venue is proper in this Court and the matter is ripe for review.

### IV. STANDARD OF DECISION

The remedy for challenging an agency's decision not to authorize testimony is a separate action in federal court pursuant to the APA. *See In re Boeh*, 25 F.3d 761, 764 n.3 (9th Cir. 1994). In an action

brought pursuant to the APA, a reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "It is well established that once an agency has taken final agency action under the APA, a reviewing court analyzes that decision under the 'arbitrary and capricious' standard of review." *Mt. St. Helens Mining & Recovery Ltd. P'ship v. United States*, 384 F.3d 721, 727 (9th Cir. 2004) (citations omitted). The parties agree that the VA's decision to deny Plaintiffs' request to depose VA employees is a final agency action subject to review under the APA's "arbitrary and capricious" standard. (UMF Nos. 9, 10; ECF No. 13-1 at 5; ECF No. 18 at 6.)

"Under the arbitrary and capricious standard, a reviewing court must determine whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Mt. St. Helens*, 384 F.3d at 728 (citation omitted). "This standard is narrow and [a reviewing court] may not substitute [its] judgment for that of the agency. Applying the arbitrary and capricious standard, [the] court must determine whether the agency articulated a rational connection between the facts and the choice made." *Id.* (citations omitted). "This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quotations omitted). "In its paradigmatic statement of this standard, the Supreme Court explained that an agency violates the APA if it has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Under the APA, the district court's review of an agency's decision is usually limited to the administrative record. 5 U.S.C. § 706; *see also Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (when reviewing final agency action, the district court is not managing a "garden

variety civil suit," but rather "sits as an appellate tribunal"). Therefore the usual "genuine dispute of material fact" standard for summary judgment normally does not apply in an APA case. *San Joaquin River Group Auth. v. Nat'l Marine Fisheries Serv.*, 819 F. Supp. 2d 1077, 1083-84 (E.D. Cal. 2011). Put another way, in the context of reviewing an administrative decision under the APA, there are normally no "disputed facts that the district court must resolve." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*; *see also City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997). "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental*, 753 F.2d at 770. Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## V. REVIEW OF THE ADMINISTRATIVE RECORD

"The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973). However, the Ninth Circuit has recognized four exceptions to this rule, allowing extra-record materials to be considered:

> (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision,
> (2) when the agency has relied on documents not in the record, [ ]
> (3) when supplementing the record is necessary to explain technical terms or complex subject matter, [or] ...
> (4) when plaintiffs make a showing of agency bad faith.

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006).

In this case, the VA produced an Administrative Record. (ECF No. 18-4.) The record contains

three letters: (1) a July 20, 2016 letter from Plaintiffs' attorney Jay Christofferson ("Christofferson") to VA attorney Stroughter attaching subpoenas (AR 001-029); (2) an August 9, 2016 letter from Christofferson to Stroughter requesting deposition testimony under *Touhy*, (AR 030-065); and (3) a February 16, 2017 letter from Stroughter to Christofferson denying Plaintiffs' request for deposition testimony pursuant to *Touhy*. (AR 066-069.)

In addition to these three documents and their attachments, the parties submit declarations and numerous other documents in support of their respective motions that are not part of the Administrative Record. Generally under the APA, the reviewing court may consider only the record before the agency. *See Ctr. for Biological Diversity*, 450 F.3d 930, 943 (9th Cir. 2006). The parties have not disputed admission of additional material, and the Court can consider certain extra-record material under the circumstances. *See Sequoia Forestkeeper v. U.S. Forest Serv.*, No. CVF07-1690 LJO DLB, 2008 WL 205602, at *2 (E.D. Cal. Jan. 24, 2008) ("to the extent supplementation of the record is agreed upon by the parties, no action by this Court is necessary"); *Sierra Pac. Indus. v. U.S. Dep't of Agric.*, No. CIV S-11-1250 KJM, 2011 WL 6749837, at *4 (E.D. Cal. Dec. 22, 2011) (granting plaintiffs' unopposed motion in case challenging agency's *Touhy* decision to supplement the record with certain documents "necessary to determine whether the agency ha[d] considered all relevant factors and ha[d] explained its decision"); *Breaker v. United States*, 977 F. Supp. 2d 921, 936-37 (D. Minn. 2013) (considering supplemental material produced in connection with litigation under the APA where both parties stipulated that the court could consider it). However, the Court will "refuse to consider evidence that was not before the agency because it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Ctr. for Biological Diversity*, 450 F.3d at 943 (internal citations and quotations omitted).

Applying these principles and considering the only additional material necessary to the Court's determination in this matter, the Court finds that letter dated July 22, 2016, from the U.S. Attorney's Office to Plaintiffs advising them that the VA would not allow the depositions to proceed in the State

Court Actions is properly part of the record as it indicates the agency's initial determination on Plaintiffs' *Touhy* request. (UMF Nos. 10-11; Christofferson Decl., Ex. G, ECF No. 13-3.) The Court disregards all other extra-record material, including documents and declarations, submitted by both parties.

## VI. APPLICABLE REGULATIONS

Under the federal housekeeping statute, 5 U.S.C. § 301, a federal agency may adopt procedures – known as *Touhy* regulations – for responding to requests for testimony or documents. These regulations have the force of law. *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir. 1986).

The VA's *Touhy* regulations, codified at 38 C.F.R. § 14.800 *et seq.*, provide that VA personnel may provide testimony or records "only as authorized by the agency" when the VA is not a party and does not have a direct or substantial interest in the case. In determining whether to authorize testimony, the regulations provide that the determining official "consider the effect . . . which testifying . . . will have on the ability of the agency or VA personnel to perform their official duties." 38 C.F.R. § 14.803(a). The VA's *Touhy* regulations also outline the following factors for the determining official to consider in deciding whether to authorize VA personnel to testify:

> (a) The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population;
>
> (b) How the testimony or production of records would assist VA in performing its statutory duties;
>
> (c) Whether the disclosure of the records or presentation of testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question;
>
> (d) Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules;
>
> (e) Whether the testimony or production of records, including release in camera, is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose, or under the relevant substantive law concerning privilege;

(f) Whether the testimony or production of records would violate a statute, executive order, regulation or directive. (Where the production of a record or testimony as to the content of a record or about information contained in a record would violate a confidentiality statute's prohibition against disclosure, disclosure will not be made. Examples of such statutes are the Privacy Act, 5 U.S.C. 552a, and sections 5701, 5705 and 7332 of title 38, United States Code.);

(g) Whether the testimony or production of records, except when in camera and necessary to assert a claim of privilege, would reveal information properly classified pursuant to applicable statutes or Executive Orders;

(h) Whether the testimony would interfere with ongoing law enforcement proceedings, compromise constitutional rights, compromise national security interests, hamper VA or private health care research activities, reveal sensitive patient or beneficiary information, interfere with patient care, disclose trade secrets or similarly confidential commercial or financial information or otherwise be inappropriate under the circumstances.

(i) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another;

(j) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government endorsing or supporting a position advocated by a party to the proceeding;

(k) The need to prevent the public's possible misconstruction of variances between personal opinions of VA personnel and VA or Federal policy.

(l) The need to minimize VA's possible involvement in issues unrelated to its mission;

(m) Whether the demand or request is within the authority of the party making it;

(n) Whether the demand or request is sufficiently specific to be answered;

(o) Other matters or concerns presented for consideration in making the decision.

38 C.F.R. § 14.804.

## VII. ANALYSIS

The parties agree that there is no genuine dispute as to any material fact in this case. The only question to resolve is a legal one: whether the VA's refusal to authorize three of its personnel to be deposed in the State Court Actions was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Citing factors (a), (b), (h), and (l) of its *Touhy* regulations, the VA argues that: (1) it does not have an interest in the outcome of the litigation because it does not own the building in which the

9

Oakhurst Clinic is located and it did not contract for the work on the HVAC system; (2) authorizing the depositions would waste public time and money on issues unrelated to the agency's mission; and (3) allowing the depositions would be unduly burdensome and would negatively impact patient care. (ECF No. 18 at 8-9; Stroughter Letter, AR 066-68.) Plaintiffs counter that: (1) the agency has an interest in determining the facts related to the alleged HVAC malfunction, as evidenced by their inquiries in the matter; (2) the inconvenience to the agency would be minimal because Plaintiffs will accommodate clinic hours in scheduling depositions; and (3) the impact on patient care would be minimal because of Plaintiffs' flexibility in scheduling. (ECF No. 19 at 1.) Plaintiffs also argue that Defendant has failed to consider important aspects of the issue, including that Plaintiffs have no other means to obtain the relevant information sought through the deposition testimony, allowing the testimony will prevent injustice, and that the VA should avoid the appearance of favoring one party in private litigation. (ECF No. 13-1 at 7-9.)

**A.** *Touhy* **Regulation Factors**

    **1.** **Impact on Patient Care**

The VA argues that authorizing the depositions would have a negative impact on patient care because nurses would have to miss scheduled appointments with their patients and that it would lead to a waste of government resources on private matters, citing § 14.804 factors (a) and (h). (ECF No. 18 at 8-9.) It states that the "principal consideration in the agency's *Touhy* regulation is the effect which authorizing testimony 'will have on the ability of the agency or VA personnel to perform their official duties.'" (ECF No. 18 at 7.) Plaintiffs counter that they have offered repeatedly to schedule depositions before or after work hours, on weekends, holidays, or days off. (ECF No. 19 at 2; AR 031.) Defendant does not dispute that Plaintiffs have offered to accommodate schedules to minimize impact on patient care or personnel work hours, nor does it address in its final determination not to authorize the depositions why this proposal is not adequate. In its final determination and its opening brief, Defendant argues only that nurses have a heavy work load, that the Oakhurst Clinic is understaffed, and that it is

crucial that nurses do not miss patient appointments. (AR 066-68.)

In its reply to Plaintiffs' opposition, the VA asserts, for the first time, that Plaintiffs' offer to depose Plaintiffs outside of clinic hours would still disrupt patient care due to "complex federal regulations and union agreements related to duty hours, leave, pay rates, premium hours, and time between shifts." (ECF No. 20 at 2-3.) For example, the VA notes that they would have to compensate the nurse deponents with overtime pay, possible shift differential pay for weekend, night, or holiday time, or that nurses could be entitled to be absent without using leave "for an equivalent period at a later date during their normal tour of duty" if they testified. (*Id.* at 2.) Although the VA acknowledges that limiting each deposition to one day (as prescribed by the California Code of Civil Procedure § 2025.290(a)) might mitigate the burden placed on the VA, it would not eliminate it. (*Id.* at 3.)[3]

While a reviewing court cannot substitute its judgment for that of the agency, it also cannot "supply a reasoned basis for the agency's action that the agency itself has not given." *Kentucky Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 413 (6th Cir. 2013). Here, the agency has not offered a rational explanation for why the depositions could not take place during times when the deponents do not have work obligations as Plaintiffs propose. *See OhioHealth Corp. v. U.S. Dep't of Veteran Affairs*, No. 2:14-CV-292, 2014 WL 4660092, at *4-7 (S.D. Ohio Sept. 17, 2014) (agency's denial based on a generic concern for patient care that failed to address plaintiff's specific request warranted remand to agency for further consideration); *see also Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1278-79 (D. Colo. 2011) (nonparty federal agency's decision not to allow its employees to respond to deposition subpoenas issued by the defendant in a products liability action was arbitrary and unjustified when the information sought was relevant and not subject to any privilege; the deposition time was limited to three hours; the depositions and inspection could be scheduled outside of normal work hours to minimize disruption; the agency's assertion that the evidence was available from some

---

[3] This explanation offered in the VA's reply brief is based on a supplemental declaration by VA employee Mike Bethel. As the court explained above, this document is not part of the administrative record and the court will not consider it. *See supra*, section V.

other source was "unsupported and obviously incorrect;" and the information sought was "crucial for the trial court to adjudicate fairly the rights of the parties in the underlying action").

In *Williams v. C. Martin Co. Inc.*, the court rejected FEMA's determination that allowing its employee to be deposed would be unduly burdensome because "any burden on FEMA is significantly outweighed by the importance of this evidence to the litigation." No. CIV.A. 07-6592, 2014 WL 3095161, at *4-5 (E.D. La. July 7, 2014) (internal citations omitted) (holding that the agency's determination not to comply with a subpoena was arbitrary and capricious because the agency failed to "examine the relevant data and articulate a satisfactory explanation for its action."). The VA's final agency determination does not address Plaintiffs' specific proposal to conduct depositions or offer a rational explanation for why the scheduling proposal cannot minimize or eliminate the risk of negative impact on VA patients. Furthermore, it does not address the burden in light of the importance and relevance of the requested testimony to the State Court Actions. The after-the-fact averments in Defendant's reply brief cannot compensate for the fact that it did not properly consider and apply its own *Touhy* regulation factors in response to Plaintiffs' request. *Ctr. for Biological Diversity*, 450 F.3d at 943 ("Parties may not use post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." (quotations omitted)). Although the Court recognizes that the VA is in a better position than the Court to determine "the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to fulfill their duties," *Solomon v. Nassau Cty.*, 274 F.R.D. 455, 459-60 (E.D.N.Y. 2011), the VA's response to Plaintiffs' request under *Touhy* fails to address Plaintiffs' offer to accommodate VA employees' work schedules and to consider the burden in light of other important factors.

In support of its position, the VA cites *CCA of Tennessee, LLC v. Department of Veterans Affairs*, No. 09cv2442 WQH (CAB), 2010 WL 1734953 (S.D. Cal. 2010) and *Solomon*, 274 F.R.D. at 459-60. In *CCA of Tennessee*, the court concluded that the VA's decision not to allow a doctor to testify regarding his patient's mental health issues in separate litigation was not arbitrary and capricious

12

because of the specialized nature of the doctor's work, her heavy patient load, the lack of substitute staff psychologists to cover for her, and the plaintiff's ability to conduct an independent mental examination of the patient's mental health issues. 2010 WL 1734953, at *8. Here, however, there is no substitute for the first-hand testimony of the nurses who witnessed the effects of the alleged carbon monoxide leak on Plaintiffs and others. Moreover, while the underlying state court litigation in *CCA of Tennessee* involved a patient's wrongful termination suit against his employer, the underlying State Court Actions here directly implicate the health and wellbeing of VA employees and patients as a result of an incident that occurred at the Oakhurst Clinic.

Likewise, in *Solomon*, the court upheld the VA's decision not to allow two of its employees to testify to a patient's medical issues in a civil suit, noting that the VA is a "federal agency of limited resources" whose employees should not be "required to give testimony for every patient they treated in unrelated civil actions, *e.g.* car accidents, slip and falls, discrimination cases, or worker's compensation cases." 274 F.R.D. 455 at 459 (internal citations omitted). However, this case is different; it deals not with an unrelated civil action, but with incidents that occurred at the Oakhurst Clinic and allegedly affected employees directly.

### 2. The VA's Interest in the State Court Actions

The VA states that it has no interest in the outcome of the State Court Actions because it does not own the building in which the Oakhurst Clinic is located and it did not contract for the work on the HVAC system. (ECF No. 18 at 8.) Therefore, the VA concludes that it need not allow its employees to testify, citing § 14.804 factors (b) and (l) – whether the testimony would assist the VA in performing its statutory duties and the need to minimize the involvement in issues unrelated to its mission. According to the VA, "[i]t is not clear how depositions of three nurses . . . would reveal anything *to the VA* that it could not otherwise discover if it chose to do so." (ECF No. 18 at 8.) However, the VA's argument that it has no interest in the State Court Actions is belied by its own involvement in the litigation and the events giving rise to it.

Specifically, the VA authorized the Oakhurst Clinic Nurse Manager Eileen Hayes, to sit for two days of depositions at the request of one of the defendants in the State Court Action. (AR 030; UMF No. 14.) Both Plaintiffs are also pursuing workers compensation benefits from the federal government relating to the alleged incidents. (AR 031.) Therefore, the federal government has had direct involvement in the State Court Actions and has an interest in the outcomes. In *Ohio Health Corp.*, the court found the VA's explanation for not wanting to involve itself in matters unrelated to its mission lacking where it was a party to litigation involving the same plaintiff and "a common nucleus of operative fact." 2014 WL 4660092, at *6. The VA's blanket assertion in this agency action that they have no interest in the litigation is inconsistent with their involvement in the State Court Actions.

Moreover, Plaintiffs are VA employees who allegedly sustained injuries while working for the VA at its facility. Defendant's claim that they have no interest in whether workplace conditions caused its employees' injuries is implausible under the circumstances. *See Ceroni*, 793 F. Supp. 2d at 1278 (USPS's decision not to allow its employees to respond to deposition subpoenas in a products liability action brought by employee who sustained work-place injury was arbitrary and unjustified when the information concerned workplace injury and was "crucial for the trial court to adjudicate fairly the rights of the parties in the underlying action."); *Beckett v. Serpas*, No. CIV.A. 12-910, 2013 WL 796067, at *12 (E.D. La. Mar. 4, 2013) (requiring the DOJ to produce witness to testify to matter in the public interest, although the DOJ was not a party to the action).

### 3. **Consideration of Other Factors**

Although the court is mindful that the VA is not required to take into account each of the factors listed in 38 C.F.R. § 14.804, *Akal Sec., Inc. v. U.S. Immigration & Customs Enf't*, No. 09-CV-2277 W NLS, 2010 WL 2731649, at *6 (S.D. Cal. July 9, 2010), failure to take into account important factors, such as whether the testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question and whether such release or testimony reasonably could be expected to result in the appearance of VA favoring one litigant over another, was arbitrary and capricious under the

circumstances. *OhioHealth Corp.*, 2014 WL 4660092, at *6. In *OhioHealth Corp.*, the court held that the VA's refusal to allow a doctor to testify was arbitrary and capricious because the agency failed to take into account important factors and failed to address plaintiff's specific *Touhy* request, instead offering only a generic response regarding their policy not to allow employees to testify. 2014 WL 4660092, at *1, *4-7. The court noted that it was not sufficient to "pay[] only lip service to the majority of the factors," including blanket assertions that the request for deposition testimony would be "unduly burdensome." *Id.* at *6-7.

It is undisputed that these VA employees have pertinent information relative to the facts at issue in the State Court Actions and that Plaintiffs have no other means of obtaining discovery. (AR 030, 033; UMF Nos. 6, 13.) Preventing their testimony would not serve the interests of justice. *United States ex rel. Lewis v. Walker*, No. 3:06-CV-16 (CDL), 2009 WL 2611522, at *4 (M.D. Ga. Aug. 21, 2009) (agency's decision not to allow employee to testify was arbitrary and capricious where the agency's conclusion that the employee did not possess relevant information was contrary to evidence in the administrative record); *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 1790189, at *2, *7-8 (E.D. Mich. May 10, 2011) (nonparty DOJ was not justified in refusing to produce to plaintiffs in civil litigation audio recordings and transcripts that the Department had compiled in a now-closed criminal investigation in civil action involving the same defendants where the information sought was "critically important" to the plaintiffs' case and plaintiffs had no other means for obtaining the information). Unlike in *CCA of Tennessee* and *Solomon*, Plaintiffs here cannot merely seek discovery from another medical professional not associated with the VA. *See Portaleos v. Shannon*, No. 5:12-CV-1359 LEK/TWD, 2013 WL 4483075, at *6 (N.D.N.Y. Aug. 19, 2013) (VA's failure to assess whether employee's testimony was "appropriate or necessary under the rules of procedure governing the case" rendered their decision not to authorize testimony arbitrary and capricious). Plaintiffs seek to depose Defendant's employees to discover their first-hand knowledge of events that they witnessed.

Furthermore, the VA did authorize one of its employees, Oakhurst Clinic head nurse Eileen

Hayes, to sit for two days of depositions in response to a subpoena from defendants in the State Court Actions. (AR 030; UMF No. 14.) Allowing its employees to testify in response to one party's subpoena, but not its adversary's subpoena, could create the appearance that the VA is favoring one litigant over another, a factor which the VA failed to address in its determination. § 14.804(i).

In declining to authorize its employees to sit for depositions, the VA drew conclusions that ran counter to the evidence before it and failed to consider important factors under its own regulations. The agency's decision was arbitrary, capricious, and an abuse of discretion.

**B.  Appropriate Remedy**

The VA's determination not to allow the Oakhurst Clinic nurses to testify was arbitrary and capricious, and not rationally related to the established facts in the record. Nonetheless, the proper remedy is not a *de novo* review by this Court of whether the VA ought to authorize its employees to be deposed. *OhioHealth Corp.*, 2014 WL 4660092, at *7 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Instead, the Court remands the issue back to the VA for additional consideration and explanation consistent with this opinion. *Id.*

## VIII. CONCLUSION AND ORDER

For the reasons set forth above, Plaintiffs' motion for summary judgment (ECF No. 13) is GRANTED. Defendant's cross-motion for summary judgment (ECF No. 18) is DENIED. This matter is hereby remanded to the Department of Veteran's Affairs for further consideration. The agency needs also to consider and to respect the time constraints involved with the State Court Actions (i.e. discovery cutoff of April 19, 2017) in its further consideration, decision and notice to Plaintiffs. To act otherwise would likely fall into the category of bad faith and unfair dealing.

IT IS SO ORDERED.

Dated:  **March 16, 2017**          /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE